IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>DEANNA ROBERTS | Criminal Action No.<br><br>1:16-CR-171-ODE |

## Motion for Upward Departure and Sentencing Memorandum

The United States of America, by John A. Horn, United States Attorney, and William L. McKinnon, Jr., and Erin E. Sanders, Assistant United States Attorneys for the Northern District of Georgia, files this Motion for Upward Departure and Sentencing Memorandum. The Government moves that the Court depart upward to offense level 38. With three points off for acceptance, the defendant's custody guideline range would be 168-210 months. The Government recommends a sentence of 204 months or 17 years' incarceration.

**1. Sentencing Guidelines Calculation**

    **A. Loss Calculation and Number of Victims**

The PSR correctly relied upon Section 2B1.1 of the Sentencing Guidelines to determine the offense level. The PSR measured loss based upon the estimated number of silicone treatments that defendant administered with the 178 gallons of silicone that she ordered from Factor II times an average charge of $500.00 per treatment. (PSR ¶¶ 29-30). Defendant objects to the loss figure, contending that

there was no actual loss here because the crime was making false statements to obtain the silicone and that Factor II, the supplier of the silicone, was paid in full. (PSR ¶ 30). However, loss under U.S.S.G. § 2B1.1 includes intended loss which means pecuniary harm that the defendant purposefully sought to inflict. U.S.S.G. § 2B1.1 comment. (n.3(A)(ii). And the definition of actual loss includes "reasonably foreseeable pecuniary harm." U.S.S.G. § 2B1.1 comment. (n.3)(A)(i). "Reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1 comment. (n. 3)(A)(iv).

   The Government intends to call witnesses at the sentencing hearing who received silicone injections from defendant. They will testify that defendant misled them in two respects. First, they will testify that defendant told them that she was a medical professional who was trained and licensed to administer silicone injections. Secondly, they will testify that defendant told them that the silicone she used was medical grade silicone. Both statements are untrue. Defendant was not a medical professional, nor was she licensed to administer silicone injections. Secondly, the Food and Drug Administration has approved the use of silicone to treat a very limited set of eye injuries or problems. Silicone is not approved for injection into buttocks, hips, breasts, lips, cheeks, and other body tissue, as defendant was doing in this case. Therefore, defendant reasonably knew that the persons whom she treated were being defrauded of the monies they paid her for the treatments. The victims believed defendant was licensed to administer the silicone injections and the she was using a product that

Case 1:16-cr-00171-ODE-JFK   Document 48   Filed 05/23/17   Page 2 of 13

there was no actual loss here because the crime was making false statements to obtain the silicone and that Factor II, the supplier of the silicone, was paid in full. (PSR ¶ 30). However, loss under U.S.S.G. § 2B1.1 includes intended loss which means pecuniary harm that the defendant purposefully sought to inflict. U.S.S.G. § 2B1.1 comment. (n.3(A)(ii). And the definition of actual loss includes "reasonably foreseeable pecuniary harm." U.S.S.G. § 2B1.1 comment. (n.3)(A)(i). "Reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1 comment. (n. 3)(A)(iv).

   The Government intends to call witnesses at the sentencing hearing who received silicone injections from defendant. They will testify that defendant misled them in two respects. First, they will testify that defendant told them that she was a medical professional who was trained and licensed to administer silicone injections. Secondly, they will testify that defendant told them that the silicone she used was medical grade silicone. Both statements are untrue. Defendant was not a medical professional, nor was she licensed to administer silicone injections. Secondly, the Food and Drug Administration has approved the use of silicone to treat a very limited set of eye injuries or problems. Silicone is not approved for injection into buttocks, hips, breasts, lips, cheeks, and other body tissue, as defendant was doing in this case. Therefore, defendant reasonably knew that the persons whom she treated were being defrauded of the monies they paid her for the treatments. The victims believed defendant was licensed to administer the silicone injections and the she was using a product that

2

was medically safe and approved. Neither was the case. Accordingly, defendant reasonably understood that a consequence of her crime of obtaining the silicone from Factor II by fraud was that she would defraud the persons who would pay her to inject the silicone into their body tissues. Using a reasonable estimate of the monies, that defendant obtained by defrauding her victims as a measure of pecuniary harm is consistent with the commentary to the Sentencing Guidelines. Defendant's objection to the loss amount should be denied.[1]

The PSR also recommends that the two-level enhancement for more than 10 victims applies. Defendant objects arguing that there are no victims. (PSR ¶ 50). However, for the same reasons outlined above, everyone whom defendant injected with silicone was defrauded of the monies that they paid defendant for

---

[1] Because 3 cc syringes were recovered in the trash from the house where Lateasha Hall received her fatal treatment and she received 10 injections in each buttock, the PSR estimated the loss amount based upon each treatment using 60 ccs. (PSR ¶ 29). Recently, victims who will testify at the sentencing hearing advised the Government that when defendant injected silicone into their breasts and/or buttocks, they observed her pour the silicone she would use into a small plastic cup. One witness identified a cup that was similar to the one defendant used and estimated how full the cup was after defendant poured the silicone into it. Based upon that demonstration, the Government estimates that defendant used about 3 ounces of silicone to treat each of that victim's breasts. Using 6 ounces per treatment as a reasonable estimate, defendant could administer 21.33 treatments per gallon. Multiplying 21.33 treatments per gallon times the 178 gallons that defendant obtained from Factor II, the number of treatments is 3,797. That figure times $500.00 per treatment results in a loss of $1,898,667.00. If the Court uses that loss amount, then the offense level would be reduced by two levels.

the injections. Therefore, there are literally hundreds of victims in this case. Defendant's objection to this enhancement should also be denied.

### B. Enhancement for Abuse of a Position of Trust

Presumably, defendant will object to this enhancement. If she does, the Government submits that the enhancement applies. As the commentary cited by the PSR notes, the enhancement applies where a defendant commits a fraud by falsely holding herself out as a licensed physician. See U.S.S.G. § 3B1.3 comment. (n. 3). Here, the victims will testify that defendant held herself out to be licensed and trained to administer silicone injections, although they did not generally believe that she was a physician. However, the victims will testify that they paid defendant to administer the treatments because they believed that she was trained and/or licensed to do so. Defendant was not licensed nor was defendant trained to administer silicone injections. Accordingly, the two-level enhancement for abuse of position of trust applies. *See United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998)("For the enhancement to apply, defendant must have been in the position of trust with respect to the victim of the crime, and the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." *See also United States v. Liss*, 265 F.3d 1220, 1229 (11th Cir. 2001)(same) and *United States v. Duran*, 620 F. App'x 687, 697–98 (11th Cir. 2013) ("In the fraud context, § 3B1.3 applies "where a fiduciary or personal trust relationship exists with other entities, and the defendant takes advantage of the relationship to perpetrate or conceal the offense" (citing *Garrison* and *Liss*)).

### C. Enhancements for Use pf Pre-Retail Medical Device and for Death of the Victim.

The PSR applied two-level enhancements for use of a pre-retail medical device and because the offense resulted in the death of the victim. (PSR ¶¶ 51, 51(a)). Presumably, defendant will not object to those enhancements.

### D. Custody Guideline Range

Based upon the positions taken by the Government's above, including the Government's amended position regarding loss amount, the total offense level should be level 28. Offense level 28 and criminal history category I results in a custody guideline range of 78-97 months.

## 2. Motion for Upward Departure

The Government contends that the use of the fraud guidelines to determine the offense level does not adequately address the fact that the victim here, Lateasha Hall, died as a direct result of the offense. In addition, other victims were hospitalized and have suffered serious bodily injury as a result of receiving silicone injections from defendant. Accordingly, there are aggravating circumstances here that are not adequately addressed in the Sentencing Guidelines calculation.

A sentencing court may depart from the Sentencing Guidelines if the court determines "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence

different from that described." U.S.S.G. § 5K2.0. The Eleventh Circuit has set forth

> a three-part test for evaluating a district court's decision to depart from the applicable Sentencing Guidelines range. First, we review *de novo* the district court's ruling that the guidelines did not adequately consider a particular factor in establishing the base offense level. This omission by the guidelines authorizes the district court's departure. (citation omitted). Second, we must review for clear error the factual findings supporting the departure. Id. Finally, we review the reasonableness of the district court's departure given the legal and factual posture of the case.

*United States v. Huang*, 977 F.2d 540, 544 (11th Cir. 1992).

### A. The Sentencing Guidelines Authorize an Upward Departure Under the Facts of this Case.

Pursuant to U.S.S.G. § 5K2.1, an upward departure may be warranted where a death results. In addition, in the fraud guidelines, U.S.S.G. § 2B1.1, Application Note 20(A)(ii), the Sentencing Commission recognizes that an upward departure would be warranted in a prosecution brought under 18 U.S.C. § 670 where death or serious bodily injury resulted from the use of the pre-retail medical device. That is exactly the circumstance that we have here. Therefore, the Sentencing Commission supports an upward departure in this case. The defendant's criminal conduct led directly to the death of Lateasha Hall and the hospitalization of Shawna Whitt, Desiree Roberts, Amberly Scott, and others.

In addition, as the Sentencing Commission has always held, the sentencing court may upwardly depart from the Sentencing Guidelines calculation when an aggravating circumstance exists that is "of a kind, or to a degree, not adequately

taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result" in a different sentence. Again, that is the case we have here. The Sentencing Commission treats Section 670 violations as financial crimes; therefore, the fraud guidelines were correctly used to calculate the offense level. Under the fraud guidelines only a two level increase is authorized if the offense involved the conscious or reckless risk of death of serious bodily injury. See U.S.S.G. § 2B1.1(b)(15)(A). Depending on how the Court rules on the pending objections to the PSR, the additional two levels will result in a custody guideline range at the low end that is only 6-18 months higher than it would be without the enhancement. A mere 6-18 month increase in the custody guideline range based upon the fact that Lateasha Hall died and others spent weeks in the hospital after receiving silicone injections by defendant does not adequately address the aggravating circumstances presented here.

  B. Facts Supporting Upward Departure

The Eleventh Circuit "agree[s] with the Second and the Seventh Circuits that, when determining whether a death "resulted" from the offense for purposes of section 5K2.1, a factual finding "that death was intentionally or knowingly risked" is sufficient." *United States v. Williams*, 51 F.3d 1004, 1012 (11th Cir. 1995) *abrogated on other grounds by Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), citing *United States v. White*, 979 F.2d 539, 545 (7th Cir. 1992) and *United States v. Rivalta*, 892 F.2d 223, 232 (2d Cir. 1989).

There is no question that the silicone injection defendant administered to Lateasha Hall caused her death. Lateasha Hall's death came after defendant knew that silicone injections that she administered to Desiree Roberts, Amberly Scott, and others had caused them to be hospitalized for extended periods of time. Because defendant knew that her silicone injections had caused significant injury to others, serious bodily injury or death was knowingly risked by defendant when she injected silicone into the buttocks of Lateasha Hall.

### C. Guidance in Determining the Degree of Departure

#### 1. The Guideline for Felony Murder Provides Guidance to the District Court in Determining the Degree of Departure.

The Sentencing Commission and appellate courts direct district courts that are considering a departure to seek guidance from the Sentencing Guidelines in determining the degree of departure that is warranted based upon the facts of the case. The Government submits that the Sentencing Guideline for Felony Murder provides guidance to the Court regarding the degree of departure that is warranted.

Felony murder is an offense that occurs when a death occurs during the commission of a felony offense where it was reasonably foreseeable to the perpetrator of the offense that a death might occur during the commission of the underlying felony. Here, even though there is no evidence that defendant planned or intended that Lateasha Hall would die from the silicone injections administered by her, because the defendant was aware that Amberly Douglas, Desiree Roberts, and others suffered severe adverse reactions from silicone

treatments the defendant administered to them, it was reasonably foreseeable to defendant that someone could die or someone else could suffer serious bodily injury from the silicone injections. Therefore, when defendant committed a felony offense, obtaining a pre-retail medical device, the silicone, by fraud and transporting it in interstate commerce, it was reasonably foreseeable to defendant that someone she injected with the fraudulently obtained silicone might die from the injections. The circumstances of this offense are sufficiently similar to those of felony murder that the felony murder guideline gives guidance to the Court in determining the degree of departure here.

**2. Calculation Based on the Felony Murder Guideline**

Pursuant to U.S.S.G. § 1A1.1, the base offense level for felony murder is 43, the same as First Degree Murder. However, Application Note B to Section 1A1.1, notes that where the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. The Sentencing Commission lists factors the district court should consider in determining the extent of the departure. These factors include the state of mind of the defendant, the degree of risk inherent in the conduct, and the nature of the underlying offense. The Sentencing Commission notes that in any event a departure to a level below level 38, the Base Offense Level for Second Degree Murder, would not be appropriate.

Using this analysis as a guide, the Court may depart to Base Offense Level 38 here. With three points off for acceptance, the final offense level becomes level 35. Offense level 35 and criminal history category I results in a custody guideline

range of 168-210 months. At the plea colloquy, the Government suggested that it would recommend a sentence of 15-18 years or 180-216 months. A sentence within that range would be consistent with a sentence based upon the felony murder guideline.

In *Williams*, the Eleventh Circuit found that an upward departure and sentence in a similar case were reasonable. In *Williams*, the intended victim of an attempted carjacking was killed by his passenger when the passenger opened fire on the defendant. 51 F.3d at 1007. The PSR calculated a range of 140 to 175 months imprisonment for the carjacking offense based on a total offense level of 28 and a criminal history category of VI. The district court granted the Government's motion for an upward departure based upon the fact that the carjacking victim was killed and increased Williams's total offense level by six levels to offense level 34. This increase placed Williams in a guideline range of 262 to 327 months. The district court then sentenced Williams to 300 months. The Eleventh Circuit affirmed the defendant's sentence, finding that "the district court's departure was reasonable in all respects." 51 F.3d at 1012.

In the instant case, the Government recommends that the Court should depart upward by 10 levels to account for defendant's state of mind and her intentional assumption of the risks that were imposed on her victims when defendant injected them with silicone. Giving defendant credit for acceptance of responsibility, the final offense level would be 35 and defendant's custody guideline range would be 168-210 months.

### 3. Victim Impact

Lateasha Hall's mother, Veda Hall, and brother, Paul Hall, will give victim impact statements at the sentencing hearing. In addition, Shawna Whitt, Desiree Roberts, and Amberly Scott will testify to the bodily injuries they suffered after receiving silicone injections from defendant.

### 4. A 17 Year Sentence is Reasonable Under Section 3553(a).

The Government recommends a sentence of 17 years' incarceration, which is within the custody guidelines range after the upward departure set forth above. A 17 year sentence is reasonable in consideration of the Section 35539a) factors the Court must consider in determining a reasonable sentence.

Although counsel for the Government will expound further upon these factors at the sentencing hearing, a lengthy sentence of incarceration is necessary to account for the seriousness of the offense—defendant's conduct resulted in the death of one victim and the hospitalization of others; specific deterrence—even after defendant knew that Lateasha Hall died, defendant ordered more silicone from Factor II and submitted a false affidavit to Factor II in an attempt to continue administering silicone treatments; general deterrence—unfortunately there are others at large who also obtain silicone by fraud for the purpose of injecting it into humans; and punishment—defendant knew how reckless it was for her to administer the silicone injections, yet she continued to do so even after she knew that she caused Lateasha Hall's death.

## Conclusion

For the foregoing reasons, the Government moves for an upward departure of the Sentencing Guidelines range and submits that a sentence of 17 years' incarceration is a reasonable sentence.

Respectfully submitted,

JOHN A. HORN
   *United States Attorney*


/s/WILLIAM L. MCKINNON, JR.
   *Assistant United States Attorney*
Georgia Bar No. 495812
William.mckinnon@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

        Colin Garrett

May 23, 2017

        /s/ WILLIAM L. MCKINNON, JR.
        WILLIAM L. MCKINNON, JR.
        *Assistant United States Attorney*